**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **MAG. NO. 22 CR 309 (TNM)** |
| | : | |
| **ARTIE BYRD,** | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION

The United States respectfully submits this memorandum in support of its oral motion that

the defendant be detained pending trial under 18 U.S.C. § 3142 (f)(1)(E) and (d)(1)(A)(iii) of the

federal bail statute.   The government requests that the following points and authorities, as well as

any other facts, arguments and authorities presented at the detention hearing, be considered in the

Court's determination regarding pre-trial detention.

### I.   Procedural History

On September 3, 2022, the defendant was charged by complaint in D.C. Superior Court

with Unlawful Possession of a Firearm (Prior Conviction).   On September 6, 2022, he was

detained pending trial following a preliminary hearing.   On September 15, 2022, he was indicted

in U.S. District Court for the District of Columbia on one count of Unlawful Possession of a

Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a

Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1) ("FIP").   On September 20,

2022, at the defendant's initial appearance, the government orally moved for detention pending

trial pursuant to the above-referenced provisions of the federal bail statute, and any additional

provisions that may apply upon review of the Pretrial Services Agency report (PSR).   A detention

hearing was scheduled for September 22, 2022.

Here, the defendant's offense involves allegations of unlawfully possessing a firearm.

Thus, a hold under (f)(1)(E) applies.   Additionally, the defendant is currently on supervised release for a federal offense when the current offense was committed.   Thus, a temporary hold under (d)(1)(A)(iii) applies.   Having satisfied the basis for a detention hearing, we now turn to the detention factors relevant under § 3142.

## II.   <u>Legal Authority and Argument</u>

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f).   Specifically, the presentation of hearsay evidence is permitted.   *See id.*; *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996).   Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use."   *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986). *See also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992).   A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues.   *See Smith*, 79 F.3d at 1210, *see also Williams*, 798 F. Supp. at 36.

There are four factors under Section 3142(g) that the Court should analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release.   *See* 18 U.S.C. § 3142(g).   A review and understanding of the facts and circumstances in this case require the Court to conclude that there are no conditions or combination of conditions that would assure the safety of the community.   *See* 18 U.S.C. § 3142(e)(1).

A.      **Nature and Circumstances of the Offenses Charged**

The first factor for the Court's consideration—the nature and circumstances of the offense charged—favors detention.   On September 2, 2022 at 11:30 PM, Mr. Byrd was the sole occupant in a Nissan Maxima driving south down Connective Avenue NW in Cleveland Park.   Officers Brady and Jaeger were on patrol in a marked MPD cruiser and saw the defendant's car with Delaware temporary tags bearing a registration beginning with the letters "XX," which Officer Brady knew had never been issued by the Delaware Department of Motor Vehicles.   Mr. Byrd turned right on Macomb Street NW.   Once officers activated the emergency lights on their cruiser, the defendant turned right on Ross Place NW and drove at a high rate of speed toward a cul-de-sac before jumping a curb and crashing into a privately-owned bench on the sidewalk.



The defendant bailed out of the car and fled into the back yard of 3314 Ross Place NW, where a residential security camera captured him running by before he made his way to the back of the house next door at 3315 Ross Place NW.   Officer Jaeger approached the fenced in back yard at 3315 Ross Place NW and discovered the defendant, who said he ran because he was afraid of getting shot.   Officer Jaeger retraced the defendant's flight path and located a Smith & Wesson SD40 VE semi-automatic handgun on the rear patio of 3314 Ross Place NW, next door to the house where the defendant was detained.   The gun had one round in the chamber and 14 rounds in a 14-round chamber.





The defendant had $498 on his person.   There was a drug scale and a single gram zip of cocaine powder in his car.   As detailed below, a criminal history check revealed that the defendant had two prior FIP convictions in U.S. District Court and a robbery conviction in D.C. Superior Court, all carrying terms of imprisonment of more than one year.

     **B.**     **<u>Weight of the Evidence against the Defendant</u>**

The second factor, the weight of the evidence, favors detention.   The evidence against the defendant is very strong.   From the moment police made contact with him, he sped away and ultimately crashed his car in a manner consistent with not merely possessing fake temporary tags, but possessing an illegal firearm.   Surveillance video from the unoccupied residence and recovery location shows the defendant running by.   The officers observed the direction of his flight, detained him, and discovered the firearm immediately after canvassing the flight path.

C.    **The Defendant's History and Characteristics**

The third factor—the history and characteristics of the defendant—weighs heavily in favor

of detention. The defendant has three prior adult felony convictions:

- ▪ Unlawful Possession of a Firearm by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, *felony* (Washington, D.C., 2021; 21-cr-27 (CKK)) (*18 months incarceration*)

- ▪ Unlawful Possession of a Firearm by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, *felony* (Washington, D.C., 2013; 12-cr-280 (RJL)) (*42 months incarceration*)

- ▪ Robbery, *felony* (Washington, D.C., 2010; 2010-CF2-7647) (*40 months suspended as to all but 24 months*)

Time and again, the defendant has been caught with firearms, as recently as last year.   This case

represents the defendant's third FIP in district court.   He was released about four months before

his arrest and had just begun a 3-year term of supervised release.   The Court gave him a chance

to return to the community—he received an 18-month sentence for his second FIP after a 42-month

sentence for his first—but he squandered the opportunity.   This is a clear pattern.   In 2017, he

violated the conditions of his supervised release in 12-cr-280 and was placed on home confinement

by Judge Leon.   As discussed below, in lieu of employment, the defendant is evidently resorting

to the narcotics trade, which he could continue to do if left in the community on home confinement.

While he did not have a gun during the 2010 robbery, the facts were alarming.   His co-

defendant violently choked and pushed the victim to the ground, while Mr. Byrd rummaged

through the victim's pockets and demanded his possessions.   After getting a chance at a YRA

sentence, his probation was revoked in 2013 and he ultimately did not get the benefit of a YRA

sentence.   According to the PSR, the defendant's supervised release had been revoked once before

the 2013 revocation.   Despite all of this, the defendant continues to possess illegal firearms in the

6

community.   In light of this criminal history, as well as the fact that the defendant was found at the time of his arrest in this case in possession of a drug scale, a one-gram zip of cocaine powder, and cash, together with the instant offense where the defendant again unlawfully possessed a loaded firearm, the government submits that the defendant should not be released.

      D.     **Danger to the Community**

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, similarly weighs heavily in favor of detention.   The Court well knows the serious risk posed by firearms.   The defendant has served two terms of incarceration for FIP and one term of incarceration for robbery in the past ten years.   Two prior federal firearm convictions have not deterred him from again possessing a firearm.   The fact that the defendant possessed the firearm along with drug paraphernalia, a quantity of cocaine (albeit small), and cash suggests that he carries the gun to protect himself, his drugs, or his money, and would use the gun to hurt or kill someone in the community, should he deem it necessary.   While possession of a firearm itself is not a crime of violence, the attendant cocaine, drug scale, and cash with the firearm make this a dangerous offense.

Even setting aside the potentially deadly combination of guns and drugs, courts have recognized the inherent dangerousness of carrying a concealed, loaded firearm on one's person. *See United States v. Gassaway*, 1:21-cr-00550 (RCL), ECF No. 9 (D.D.C. Sept. 16, 2021) ("This Court agrees with other courts in this district that unlawfully carrying a concealed or loaded firearm in public poses a risk of danger to the public."); *see United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence," particularly when defendant's prior convictions indicate a predilection for violence); *United States*

7

*v. Riggins*, 456 F. Supp. 3d 138, 144 (D.D.C. 2020) ("[T]he possession of a firearm, especially while seemingly on a drug such as PCP, presents a serious danger to the community."); *United States v. Howard*, No. 20-mj-181 (BAH), 2020 WL 5642288, at *3 (D.D.C. Sept. 21, 2020) ("Illegally possessing a concealed firearm in public where other people are congregated, as alleged, poses an inherent risk of danger to the community.").   *Cole* is particularly noteworthy given the defendant's prior robbery conviction and willingness in this case to speed down a dead-end-street, jump a curb, and crash into a residential bench, before leaving a loaded firearm on someone's back patio.   In January 2021, the Court ordered the defendant's detention pending trial, citing his criminal history, history of violence and weapons use, and lack of stable employment, among other considerations.

For these reasons, the government submits that the Court should again order the defendant's detention during the pendency of this case to protect the community.

### III.   Conclusion

The government respectfully requests that the Court issue an Order granting its motion that the defendant be held without bond pending trial.

> Respectfully submitted,
>
> MATTHEW M. GRAVES
> UNITED STATES ATTORNEY
> D.C. Bar No. 481052
>
>
> By:    /s/ *Connor Mullin*                            
> Connor Mullin
> D.C. Bar No. 981715
> Assistant United States Attorney
> Federal Major Crimes Section
> United States Attorney's Office for D.C.
> 601 D Street NW, Fifth Floor

Washington, D.C. 20530
E-mail: connor.mullin@usdoj.gov
Telephone: (202) 252-7079

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I caused a copy of this pleading to be served upon defense counsel this 20th day of September 2022.

_____/s/_____
Connor Mullin
Assistant United States Attorney